# 14-1381-cv

*To Be Argued By:*
DANIEL SHAPIRO
Assistant Attorney General

**IN THE**

# United States Court of Appeals

FOR THE SECOND CIRCUIT

---

**SENSATIONAL SMILES, LLC, DBA SMILE BRIGHT,**

*Plaintiff-Appellant*

**LISA MARTINEZ,**

*Plaintiff*

v.

**JEWEL MULLEN, DR., in her official capacity as Commissioner of Public Health, JEANNE P. STRATHEARN, DDS, in her official capacity as a Member of the Connecticut Dental Commission, ELLIOT S. BERMAN, DDS, in his official capacity as a Member of the Connecticut Dental Commission, LANCE E. BANWELL, DDS, in his official capacity as a Member of the Connecticut Dental Commission, PETER S. KATZ, DMD in his official capacity as a Member of the Connecticut Dental Commission, STEVEN G. REISS, DDS, in his official capacity as a Member of the Connecticut Dental Commission, MARTIN UNGAR, DMD, in his official capacity as a Member of the Connecticut Dental Commission, BARBARA B. ULRICH, in her official capacity as a Member of the Connecticut Dental Commission,**

*Defendants-Appellees*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

===

**BRIEF OF DEFENDANTS-APPELLEES**

===

GEORGE JEPSEN
ATTORNEY GENERAL

DANIEL SHAPIRO
Assistant Attorney General
Federal Bar ct20128
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel. (860) 808-5210
Fax (860) 808-5385
Daniel.Shapiro@ct.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

STATEMENT OF THE ISSUE ........................................................... 1

STATEMENT OF THE CASE ............................................................ 1

    I.    BACKGROUND ................................................................ 1

    II.   FACTS ................................................................................ 4

SUMMARY OF ARGUMENT ............................................................ 11

ARGUMENT ........................................................................................ 14

STATEMENT OF THE STANDARD OF REVIEW .............................. 14

    I.    PLAINTIFF'S EQUAL PROTECTION AND SUBSTANTIVE DUE PROCESS CLAIMS FAIL BECAUSE THERE WAS A RATIONAL BASIS FOR THE MINOR RESTRICTION FOR NON-DENTISTS OFFERING TEETH WHITENING. ........... 14

    II.   WHETHER OR NOT TEETH WHITENING IS TAUGHT IN DENTAL SCHOOL IS IRREVELENT TO THE CONSTITUTIONAL INQUIRY ................................................ 33

    III.  THERE IS NO EVIDENCE TO SUGGEST THAT THIS MINOR RESTRICTION LIMITS COMPETITION AND THERE IS NO MISMATCH BETWEEN COSTS AND BENEFITS. .............................................................................. 36

    IV.  PLAINTIFF'S CLAIMS REGARDING THE INTEREST OF THE DENTAL COMMISSION IN RESTRICTING COMPETITION IS IRRELEVANT. ......................................... 39

CONCLUSION ..................................................................................... 41

CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS ................................................................................. 42

CERTIFICATION ................................................................................ 43

# TABLE OF AUTHORITIES

## Cases

American Party of Texas v. White, 415 U.S. 767 (1974) ........................20

Amsel v. Brooks, 141 Conn. 288 (1954) ...................................................18

B & G Construction Co, Inc. v. Director, Office of Workers'
    Compensation Programs, 662 F.3d 233 (3rd Cir. 2011) ......................15

Barry v. Barchi, 443 U.S. 55 (1979) ........................................................18

Beatie v. City of New York, 123 F.3d 707 (1997)....................................39

City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432 (1985)
    ...........................................................................................................20

Clayborne v. Califano, 603 F.2d 372 (2d Cir.1980) ................................15

Clayton v. Steinagel, 885 F.Supp.2d 1212 (D. Utah 2012)....................32

Clements v. Fashing, 457 U.S. 957 (1982)..............................................20

Conn v. Gabbert, 526 U.S. 286 (1999) ....................................................18

Cornwell v. Hamilton, 80 F.Supp.2d 1101 (S.D. Cal. 1999)............31, 32

Craigmiles v. Giles, 312 F.3d 220 (6th Cir. 2002).......................30, 32, 39

Delaney v. Bank of America Corporation et. al, 766 F.3d 163 (2d Cir.
    2014) ...................................................................................................14

Dent v. West Virginia, 129 U.S. 114 (1889)............................................17

Elf v. Department of Public Health, 66 Conn. App. 410 (2001) .............18

FCC v. Beach Communications, 508 U.S. 307 (1993) ............................23

Fed. Commc'n Comm'n v. Beach Commc'ns, Inc., 508 U.S. 307
    (1993) ...............................................................................................4, 39

Ferguson v. Skrupa, 372 U.S. 726 (1963) ...............................................17

Gade v. Nat'l Solid Waste Mgmt. Ass'n, 505 U.S. 88 (1992).................17

Goldfarb v. Virginia State Bar, 421 U.S. 773 (1975)..............................17

Heller v. Doe, 509 U.S. 312 (1993)................................................ passim

Hill v. Gill, 703 F.Supp. 1034 (D. R.I. 1989), aff'd, 893 F.2d 1325
    (1st Cir. 1989) .....................................................................................36

Karan v. Adams, 807 F.Supp. 900 (D. Conn. 1992)................................36

Lange-Kessler v. Dept. of Education, 109 F.3d 137
    (2d Cir. 1997)......................................................... 16, 17, 35, 36

Martinez v. Mullen, 11F.Supp.3d 149 (D. Conn. 2014).................. passim

Massachusetts Board of Retirement v. Murgia, 427 U.S. 307 (1976)....29

Merrifield v. Lockyer, 547 F.3d 978 (9th Cir. 2008) ...............................31

Molinari v. Bloomberg, 564 F.3d 587 (2d Cir. 2009) .......................12, 16

<u>N.C. State Bd. of Dental Exam'rs v. FTC</u>, 717 F.3d 359 (4th Cir. 2013), <u>cert. granted</u>, 134 S.Ct. 1491 (2014) .............................................. 40, 41

<u>Natale v. Town of Ridgefield</u>, 170 F.3d 258 (2d Cir. 1999) ................... 16

<u>Nordlinger v. Hahn</u>, 505 U.S. 1 (1992) .................................................. 21

<u>Pet v. Department of Health Services</u>, 228 Conn. 651 (1994) ................. 8

<u>Plyler v. Doe</u>, 457 U.S. 202 (1982) ......................................... 36, 37, 38

<u>Powers v. Harris</u>, 379 F.3d 1208 (10th Cir. 2004), <u>cert</u>. <u>denied</u>, 544 U.S. 920 (2005) .......................................................................... 15, 31

<u>State v. Vachon</u>, 140 Conn. 478 (1953) .................................................. 18

<u>U.S.A. Baseball v. City of New York</u>, 509 F.Supp.2d 285 (S.D.N.Y. 2007) ................................................................................. 15

<u>U.S. v. Thomas</u>, 628 F.3d 64 (2d Cir. 2010) .................................... 21, 22

<u>United States v. Windsor</u>, ___ U.S. ____, 133 S.Ct. 2675 (2013) .......... 22n

<u>Williamson v. Lee Optical, Inc.</u>, 348 U.S. 461 (1955) ........................... 17

<u>Windsor v. U.S.</u>, 699 F.3d 169 (2012) .................................................. 22n

<u>Zobel v. Williams</u>, 457 U.S. 55 (1982) .............................................. 29, 30

**Statutes**

Conn. Gen. Stat. § 4-176 ......................................................................... 3

Conn. Gen. Stat. § 4-176(a) ............................................................. 6, 20

Conn. Gen. Stat. § 4-176(h) ................................................................... 6

Conn. Gen. Stat. § 19a-2a ...................................................................... 4

Conn. Gen. Stat. § 19a-11 ...................................................................... 6

Conn. Gen. Stat. § 19a-14(a)(10) .......................................................... 4

Conn. Gen. Stat. § 20-103a ................................................................... 5

Conn. Gen. Stat. § 20-106 ..................................................................... 5

Conn. Gen. Stat. § 20-107 ..................................................................... 5

Conn. Gen. Stat. § 20-114 .................................................................. 4, 5

Conn. Gen. Stat. § 20-123 .......................................................... *passim*

Chapter 379 of the Connecticut General Statutes .................................. 4

**Other Authorities**

2 Ronald D. Rotunda & John E. Nowak, <u>Treatise on Constitutional Law: Substance and Procedure</u>, § 14.6 n.110 (4th ed. 2007) ................ 15

## STATEMENT OF THE ISSUE

Whether the District Court correctly granted defendant's motion for summary judgment by holding that the United States Constitution was not violated when the State prohibited a non-dentist from practicing dentistry by positioning an LED light at a customer's mouth during teeth whitening thereby enhancing the chemical used in the teeth whitening process.

## STATEMENT OF THE CASE

### I.    BACKGROUND

This is an appeal of a ruling by the District Court granting defendant's motion for summary judgment based upon its conclusion that the Declaratory Ruling of the Connecticut State Dental Commission ("Commission"), made after a full evidentiary hearing that included the receipt of expert testimony, was rationally related to the legitimate governmental purpose of protecting the public health.  As required by the precedent of the United States Supreme Court and this Court, the District Court applied the highly deferential rational basis test.

1

As there was evidence before the Commission to show that there was some public health risk, the Commission rationally could have concluded that limiting the use of an LED light as part of the teeth whitening process to licensed dentists was rational. The Commission reasonably found that the use of an LED light by a non-dentist constituted the practice of dentistry and is therefore barred by the express language of the relevant Connecticut statute. As discussed more fully below, the Commission did not ban teeth whitening by non-dentists, and in fact, virtually all of the activities engaged in by plaintiff are permitted under the Declaratory Ruling's interpretation of the Connecticut General Statutes.

Virtually all of the facts in this case are undisputed. On December 8, 2010, after notice was published in the Connecticut Law Journal, the Commission held a hearing on issues related to teeth whitening. Plaintiff did not participate in the hearing. The Commission received oral and written testimony from witnesses, including expert witnesses. A-199–A-200. After careful consideration of the evidence and relying on its own expertise in evaluating the evidence, the Commission issued a Declaratory Ruling pursuant to

2

Conn. Gen. Stat. § 4-176 which permitted teeth whitening by non-dentists and specified circumstances when some practices in the provision of teeth whitening services constitute the practice of dentistry, thus requiring licensure.  A-198–A-203. [1]

For example, the Declaratory Ruling indicates that, "the selling of teeth whitening gels of differing strengths by non-licensed persons is not, by itself, the practice of dentistry."  A-202.  The Commission further noted that "the selling of over the counter teeth whitening products of differing strengths does not constitute the practice of dentistry if the seller is not evaluating a particular patient and recommending products based upon an examination or evaluation of a particular patient/consumer."  A-202.

The District Court, using the highly deferential rational basis test for instances when a suspect or quasi-suspect classification is not implicated, determined that "there is some literature that suggests that shining a LED light at a person's mouth poses some risk to that person's oral health" and therefore it was enough to provide a

---

[1] Plaintiff readily admits that it is not a professional-service corporation and that its owners are not licensed dentists nor do they employ licensed dentists.  Plaintiff's Brief, p. 4.

3

"reasonably conceivable state of facts" for the Commission's ruling allowing only highly qualified dentists trained in the area of oral health to position LED lights during the teeth whitening treatment. <u>Martinez v. Mullen</u>, 11 F.Supp.3d 149, 151 (D. Conn. 2014), citing <u>Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.</u>, 508 U.S. 307, 313 (1993). Plaintiff appeals for this ruling of the District Court.

## II.   FACTS

Responsibility for protecting the public health is shared by the Connecticut Department of Public Health ("Department") through its Commissioner and various boards and commissions. Conn. Gen. Stat. § 19a-2a and Chapter 379 of the Connecticut General Statutes. The Department is responsible for conducting investigations regarding possible violations of statutes and regulations and is responsible for disciplinary matters. Conn. Gen. Stat. § 19a-14(a)(10).

The Commission is one of the entities responsible for protecting the public with respect to dental care, and it has authority to take disciplinary action against dentists based upon incompetence, negligence or indecent conduct toward patients. Conn. Gen. Stat. § 20-114. The Commission can also discipline a dentist for aiding or

4

abetting in the practice of dentistry, dental medicine or dental hygiene of a person not licensed to practice dentistry, dental medicine or dental hygiene in this state.  Id.

Connecticut law provides that no person shall engage in the practice of dentistry or dental medicine unless such person has first obtained a license from the Department.   Conn. Gen. Stat. § 20-106. The practice of dentistry is defined as the diagnosis, evaluation, prevention or treatment by surgical or other means, of an injury, deformity, disease or condition of the oral cavity or its contents, or the jaws or the associated structures of the jaws.  Conn. Gen. Stat. § 20-123. In order to be licensed as a dentist in Connecticut, an individual must graduate from a reputable dental college or from a department of dentistry of a medical college conferring a dental degree unless the individual is licensed in another state which has requirements similar to or higher than the requirements in Connecticut.  Conn. Gen. Stat. § 20-107.

The Commission is created by statute and is composed of a majority of licensed dentists.  Conn. Gen. Stat. § 20-103a. Any person may petition an agency, or an agency on its own motion may

5

initiate a proceeding for a declaratory ruling as to the validity of any regulation or the applicability to specified circumstances of a provision of the general statutes. Conn. Gen. Stat. § 4-176(a). A declaratory ruling shall have the same status and binding effect as an order issued in a contested case and shall be a final decision for purposes of appeal. Conn. Gen. Stat. § 4-176(h).

The Commission may, in its discretion, issue an appropriate order to any person found to be violating an applicable statute or regulation including the practice of dentistry without a license, providing for the immediate discontinuance of the violation. Conn. Gen. Stat. § 19a-11. The Commission may, through the Attorney General, petition the superior court for the enforcement of any order issued by it and for appropriate temporary relief or a restraining order. Id.

On September 8, 2010, the Commission, on its own initiative, began a declaratory ruling proceeding regarding whether teeth whitening practices constitute the practice of dentistry as set forth in Conn. Gen. Stat. § 20-123 and what teeth whitening practices or procedures must be performed only by a licensed dentist or person legally authorized to work under the supervision of a licensed dentist.

6

A-198.  Plaintiff did not participate in the Declaratory Ruling

proceeding.  A-198–A-203.

On June 8, 2011, after a hearing in which testimony was provided

by an expert in the field of teeth whitening, the Commission made

findings of fact and issued a Declaratory Ruling concluding that teeth

whitening can be provided by non-dentists in Connecticut.[2]  It further

held that certain teeth whitening services constitute the practice of

dentistry, and are therefore prohibited by statute, when they include:

(1) assessing and diagnosing the causes of discoloration; (2) making

recommendations of how to perform teeth whitening; (3) customizing

treatment; (4) utilizing instruments and apparatus such as enhancing

lights; (5) selecting or advising individuals on the use of trays; (6)

preparing or making customized trays for individuals; (7) applying teeth

whitening products to the teeth of a customer; (8) instructing a

customer on teeth whitening procedures or methods; or (9) other

---

[2] The Commission did not ban all teeth whitening by non-licensed
individuals, and in fact, the Commission held that when a person is
"merely selling whitening products" that are otherwise legal to sell, it
does not constitute the practice of dentistry. A-202.  The Commission
found that the selling of teeth whitening gels of differing strengths by
non-licensed persons is not, by itself, the practice of dentistry.  A-202.

activities discussed in the declaratory ruling.  A-203.

As discussed above, the only remaining issue in this case is whether the restriction that prohibits a non-dentist from utilizing an LED light in providing teeth whitening services constitutes a constitutional violation.

In the instant case, the Commission's Declaratory Ruling was based entirely on the record.  A-199.  In addition to relying on the evidence at the hearing, the Commission relied on its own expertise in evaluating the evidence.  A-199. See <u>Pet v. Department of Health Services</u>, 228 Conn. 651, 669 (1994).

More specifically, after considering all of the written evidence and oral testimony, the Commission found in its findings of fact that: Jonathan C. Meiers, DMD, is an expert in the field of dentistry, and he has expertise in the field of teeth whitening.  A-200, FOF ¶ 2; Meiers provided reliable and credible oral and pre-filed written testimony.  A-200, FOF ¶ 3.

Dr. Meiers testified, and the Commission found that tooth discoloration can be the result of numerous factors including smoking, coffee, tea or any other type of compound taken orally that can stain

teeth. A-200, FOF ¶ 4; Metabolic disease, trauma to the tooth pulp and certain drugs taken when the teeth were being formed can also cause discoloration. A-200, FOF ¶ 5; Tooth whitening products contain potent oxidizing elements that, if applied incorrectly, can cause serious burns. A-200, FOF ¶ 6; Hydrogen peroxide and carbamide peroxide can cause tooth sensitivity and tissue burns. A-200, FOF ¶ 11; Professionally applied treatments attempt to prevent tissue burns by the use of tissue isolation by using a rubber dam and cotton roll or gauze isolation to prevent contact with the hydrogen peroxide. A-200, FOF ¶ 12.

In his pre-filed testimony, Dr. Meiers attached charts from other scientific studies with indicated properties and risks when using light-activated bleaching. Also, Dr. Meiers cited scientific studies which indicated that "[p]ulpal irritation, tooth sensitivity and mucosal or lip burns have been reported to occur at a higher rate with the use of bleaching lights for in office bleaching procedures than for non light enhanced bleaching treatments." As part of his pre-filed testimony, Dr. Meiers attached more than 150 pages of documentation in support of his pre-filed testimony regarding teeth whitening.

The Commission found that there are risks associated with the

9

use of light for teeth whitening.   A-201, FOF ¶ 14; There should be adequate eye and skin protection for the patient and the operator of the light if it is being used to enhance the product in a bleaching procedure. A-201, FOF ¶ 15; Pulpal irritation, tooth sensitivity and lip burns have been reported to occur at a higher rate with the use of bleaching lights. A-201, FOF ¶ 16; The decision of whether to recommend or apply bleaching agents and/or bleaching lights to a particular person's teeth requires significant diagnostic expertise and skills, in part, to allow the provider to distinguish between pathological versus non-pathological causes of tooth discoloration.  A-201, FOF ¶ 17.

The Commission ruled that conduct becomes the practice of dentistry when such unlicensed person uses light in an attempt to enhance the product's effectiveness.  A-202.  In addition,  applying a light source or other light assisted bleaching systems to enhance the tooth whitening process constitutes the practice of dentistry.  A-202– A-203.

The District Court determined that the restriction on non-dentists withstood constitutional scrutiny because the Commission could have "rationally" concluded that "restricting the use of LED lights would

10

protect the oral health of the public." <u>Martinez</u>, 11 F.Supp.3d at 164. The Court District correctly noted that there was enough evidence in the record before the Commission to reach this conclusion and that "the Constitution does not prevent government officials from taking prophylactic measures to protect the public in the face of uncertainty." <u>Id.</u>

## SUMMARY OF ARGUMENT

Under the highly deferential rational basis standard, the Declaratory Ruling issued by the Commission easily withstands the equal protection and substantive due process challenge. After a full evidentiary hearing, the Dental Commission found that there was evidence of some risk with the use of LED lights in the performance of teeth whitening and that the utilizing of such light by a non-dentist constituted the practice of dentistry and therefore was barred by the express language of the Connecticut statutes. Conn. Gen. Stat. § 20-123.

The Commission did <u>not</u> bar all teeth whitening services by non-dentists. In fact, virtually all of the activities that plaintiff engaged in are permitted by the Declaratory Ruling and the Connecticut General

11

Statutes.  For example, plaintiff can sell teeth whitening gels of differing strengths, provide a place for an individual to use the trays full of various chemicals, provide the consumer with the manufacturer's instructions on how to use the products, and provide an LED light for the customer to place in front of his or her own mouth.  Plaintiff even described the placing of the LED light in front of the consumer's mouth as providing "trivial" assistance.  It is this trivial assistance that forms the basis of plaintiff's constitutional claims.

The United States Supreme Court and this Circuit have consistently held that a classification does not violate the equal protection clause if it is rationally related to a legitimate state interest. The plaintiff has the burden of demonstrating that there is no rational relationship between the legislation and a legitimate state interest. Molinari v. Bloomberg, 564 F.3d 587, 606 (2d Cir. 2009).  The United States Supreme Court emphatically stated that "a classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Heller v. Doe, 509 U.S. 312, 320 (1993) (internal quotes omitted).

12

In this case the Commission, comprised of mostly licensed dentists, heard expert testimony and accepted written pre-filed testimony that indicated that there is some risk associated with the use of LED lights and other light in teeth whitening. This evidence clearly meets the highly deferential standard detailed above. The fact that plaintiff found an expert who has indicated that there is no risk associated with the use of LED lights is constitutionally irrelevant. The <u>Heller</u> court held that rational basis review in equal protection analysis is "not a license for courts to judge the wisdom, fairness or logic of legislative choices." <u>Id.</u> at 319. In fact, plaintiff must "negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." <u>Id.</u> at 320-21. The compliance with the rational basis test for the equal protection analysis also meets the substantive due process challenge raised by the plaintiff.

As correctly held by the District Court, the Commission could have rationally concluded that restricting the use of LED lights would protect the oral health of the public.

# ARGUMENT

## STATEMENT OF THE STANDARD OF REVIEW

The Court of Appeals reviews a District Court's grant of summary judgment *de novo,* construing the evidence in the light most favorable to the non-moving party.  <u>Delaney v. Bank of America Corporation et. al</u>, 766 F.3d 163, 167 (2d Cir. 2014).  The Court of Appeals upholds a granting of summary judgment if the evidence demonstrates that there are no genuine issues of material fact and the judgment is warranted as a matter of law.  <u>Id.</u>

I. **PLAINTIFF'S EQUAL PROTECTION AND SUBSTANTIVE DUE PROCESS CLAIMS FAIL BECAUSE THERE WAS A RATIONAL BASIS FOR THE MINOR RESTRICTION FOR NON-DENTISTS OFFERING TEETH WHITENING.**

Contrary to plaintiff's assertion, the decision of the Commission does not violate the equal protection clause or the substantive due process guarantees of the Fourteenth Amendment because it is rationally related to a legitimate state purpose because there is uncertainty regarding the risks posed by the use of lights as part of the teeth whitening process and therefore the restriction on their use has a conceivable rational basis.

14

Demonstrating a rational relationship sufficient to meet the requirements of substantive due process is basically the same as satisfying the requirements of the equal protection clause. See B & G Construction Co, Inc. v. Director, Office of Workers' Compensation Programs, 662 F.3d 233, 256 n. 22 (3rd Cir. 2011)("the analysis under substantive due process is essentially the same as an equal protection analysis"); Powers v. Harris, 379 F.3d 1208, 1215 (10th Cir. 2004), cert. denied, 544 U.S. 920 (2005)("a substantive due process analysis proceeds along the same lines as an equal protection analysis"); 2 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure, § 14.6 n.110 (4th ed. 2007).  As this matter does not involve a suspect class or even quasi-suspect class and because the restriction at issue does not involve a fundamental right, the analysis of the substantive due process claim tracks the analysis of the equal protection claims. See Clayborne v. Califano, 603 F.2d 372, 380-81 n. 17 (2d Cir.1980); Martinez, 11 F.Supp.3d at 158, citing U.S.A. Baseball v. City of New York, 509 F.Supp.2d 285, 296 (S.D.N.Y. 2007). "The law in [the Second] Circuit is clear that where, as here, a statute neither interferes with a fundamental right nor singles out a suspect

15

classification, [the court] will invalidate that statute on substantive due process grounds only when a plaintiff can demonstrate that there is no rational relationship between the legislation and a legitimate legislative purpose." <u>Molinari</u>, 564 F.3d at 606 (internal quotation marks and brackets omitted).

This Court has held that "substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental power." <u>Natale v. Town of Ridgefield</u>, 170 F.3d 258, 263 (2d Cir. 1999) (emphasis supplied). A careful reading of the Declaratory Ruling suggests anything but a gross abuse of governmental power and is consistent with the measured use of regulatory oversight of health care to protect the public. In addition, the decision is based upon evidence that the Commission carefully considered and found reliable and credible.

As in an equal protection challenge, in a substantive due process challenge "[a] statute regulating a profession is presumed to have a rational basis unless the plaintiff shows that the legislative facts upon which the statute is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." <u>Lange-Kessler v. Dept.</u>

of Education, 109 F.3d 137, 140 (2d Cir.1997)(internal quotation marks and brackets omitted).  "To defeat [a substantive due process] challenge, the state is not required to come forth with empirical evidence tending to show that the facts underlying the restrictions are true." Id. at 140. "Rather, a statute withstands a substantive due process challenge if it 'might be thought' that enacting the statute was a rational way to further a legitimate interest." Id., citing Williamson v. Lee Optical, Inc., 348 U.S. 461, 488 (1955).

There can be no debate that the State has a legitimate interest in the oversight of health care provided to the public.

> We recognize that 'the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.' Goldfarb v. Virginia State Bar, 421 U.S. 773, 792 . . . . (1975); see also Ferguson v. Skrupa, 372 U.S. 726, 731 . . . . (1963); Dent v. West Virginia, 129 U.S. 114, 122 . . . . (1889).

Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 108 (1992). Furthermore, this interest is the basis for regulation of the provision of health care by licensed professionals. As eloquently stated the Connecticut Appellate Court, "[A]mong all the objects sought to be

17

secured by governmental laws, none is more important [than the protection of public health]; and an imperative obligation rests on the state, through its proper instrumentalities or agencies, to take all necessary steps to promote this object." Elf v. Department of Public Health, 66 Conn. App. 410, 428-29 (2001) (citation omitted).

The generalized "right" to pursue one's profession has always been subject to reasonable governmental regulation. See, State v. Vachon, 140 Conn. 478 (1953); Amsel v. Brooks, 141 Conn. 288, 296 (1954). ("No one has an inalienable right to pursue a profession or vocation which requires special knowledge or peculiar skill and is therefore a proper subject for supervision in the interest of public welfare." See also, Conn v. Gabbert, 526 U.S. 286, 291-92 (1999). Unlike regulations that affect fundamental rights, the regulation of a professional license is subject only to a rational basis review. See, Barry v. Barchi, 443 U.S. 55, 61-62, 67-68 (1979).

The Declaratory Ruling is wholly related to a legitimate state interest namely protecting the public, and the Commission received expert testimony and other written evidence indicating that there are

health risks to allowing unlicensed individuals who have no training in dentistry to utilize light in providing teeth whitening services.

The Commission found that teeth whitening constitutes the practice of dentistry when an unlicensed person "uses light in an attempt to enhance the product's effectiveness . . . ." A-202–A-203. The Commission found that tooth discoloration can be the result of numerous factors including smoking, coffee, tea or any other type of compound taken orally that can stain teeth. A-200, FOF ¶ 4; Metabolic disease, trauma to the tooth pulp and certain drugs taken when the teeth were being formed can also cause discoloration. A-200, FOF ¶ 5. The process of teeth whitening to remove discoloration falls within the statutory definition of dentistry which includes the "treatment by surgical or other means, of an injury, deformity, disease or condition of the oral cavity or its contents. . . ." Conn. Gen. Stat. § 20-123. The application of light to enhance a product designed to address a condition is treatment, and as such, it is barred by the express language of the statute prohibiting the practice of dentistry by unlicensed individuals. See Conn. Gen. Stat. § 20-123. The declaratory ruling statute specifically authorizes the Commission to conduct a proceeding for a

19

declaratory ruling "as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes . . . ." Conn. Gen. Stat. § 4-176(a).

It was rational and reasonable for the Commission to determine that the use of bleaching lights to enhance teeth whitening by an unlicensed person should not be permitted. As discussed below, the Commission received evidence that supported a rational conclusion that use of lights posed a risk of harm to patients and therefore should only be utilized by a licensed dentist.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "In making an equal protection challenge, it is the claimant's burden to 'demonstrate in the first instance a discrimination against him of some substance.'" Clements v. Fashing, 457 U.S. 957, 967 (1982), quoting American Party of Texas v. White, 415 U.S. 767, 781 (1974). The plaintiff has not demonstrated that she is a person similarly situated

20

with licensed dentists. "The Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  Licensed dentists and lay persons are certainly not persons who are 'alike', especially with respect engaging in activities related to treatment of the conditions of the teeth and mouth.  Notwithstanding plaintiff's failure of demonstrating in the first instance that she is similarly situated to licensed dentists but treated differently, assuming arguendo that plaintiff could meet this burden, her equal protection challenge also fails.

The U.S. Supreme Court has held that "**a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification**." Heller, 509 U.S. at 320 (internal quotation marks omitted)(emphasis supplied); U.S. v. Thomas, 628 F.3d 64, 70 (2d Cir. 2010). "[R]ational basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  Heller, 509 U.S. at 319 (internal quotation marks omitted). Instead, "[a] statute is presumed

21

constitutional . . . . and the burden is on the one attacking the legislative arrangement **to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record**." Id. at 320-321 (internal quotation marks omitted) (emphasis supplied); see also Thomas, 628 F.3d at 70-71.[3]

This limitation means that "[a] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." Heller, 509 U.S. at 320. "A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." Id. at 321 (internal quotation marks omitted). Instead, "[t]he Constitution presumes that, absent some reason to infer

---

[3] Interestingly, one of the main cases that plaintiff asserts as an example of the Supreme Court's holding for a plaintiff in a rational basis case does not in fact use that standard. United States v. Windsor, ___ U.S. ___, 133 S. Ct. 2675 (2013). The Supreme Court case affirmed this Court's decision. Windsor v. U.S., 699 F.3d 169 (2012). This case did not involve the rational basis standard. In this case, this Court held that review of the Defense of Marriage Act "requires heightened scrutiny." Id. at 181. This court went on to discuss that "to withstand intermediate scrutiny, a classification must be **substantially related** to an important government interest." Id. at 185. (emphasis supplied). In the Supreme Court's opinion affirming this Court's decision, there is no indication that it found that the Second Circuit used the wrong constitutional standard.

antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely [the Court] may think a political branch has acted." FCC v. Beach Communications, 508 U.S. 307, 314 (1993).

"These restraints on judicial review have added force where the legislature must necessarily engage in a process of line-drawing." Id. at 315 (internal quotation marks omitted). "Defining the class of persons subject to a regulatory requirement . . . . inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact that the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." Id. at 315-316 (internal quotation marks and brackets omitted). In other words, such unequal line-drawing does not create a constitutional violation.  As the Supreme Court has recognized, "[t]his standard of review is a paradigm of judicial restraint." Id. at 314.

The United States Supreme Court has made it very clear that "courts are compelled under rational-basis review to accept a

23

legislature's generalizations even when there is an imperfect fit between means and ends." <u>Heller</u>, 509 U.S. at 321. "A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification." <u>Id.</u> at 320. "A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." <u>Id.</u>

Thus, a legislature need not articulate the rationale for a legislative classification, nor prove it is justified.

The classification in the statutes regarding dentistry, which distinguishes between persons who have dental medicine training and expertise and people who do not, easily satisfies rational basis review. It is entirely conceivable that the legislature determined that it would pose a risk to public safety to allow persons to engage in the practice of dentistry who do not have specialized training. Such individuals, the legislature could have concluded, are more likely cause harm to the public if allowed to practice dentistry without training and consequently a license. Such reasoning is not irrational.

The Declaratory Ruling is wholly related to a legitimate state interest namely protecting the public, and the Commission received

24

expert testimony and other written evidence indicating that there are health risks to allowing unlicensed individuals who have no training in dentistry to utilize light in providing teeth whitening services.

The District Court correctly held that plaintiff failed to meet its burden in showing that there is no rational basis for the minor restrictions imposed on non-dentists engaged in the teeth whitening business. Plaintiff's burden is to "negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." Id. at 320-21.

Prior to the Declaratory Ruling hearing, and as required by the Notice, Dr. Meiers submitted pre-filed written testimony which he adopted under oath at the hearing. As part of his submission he attached articles which provided information regarding some of the risks associated with various lights used for light-activated bleaching. The first article, authored by two German dentists and published in 2007, discussed information regarding the effects of activated bleaching procedures. Martinez, 11 F.Supp.3d at 162, citing Wolfgang Buchalla & Thomas Attin, External Bleaching Therapy with Activation by Heat, Light or Laser – A Systematic Review, Dental Materials 23 (2007). At

25

the District Court stated, with respect to LED light systems in

particular, the article raised the following concerns:

> Although LED systems do "not extend as far into the [infra-red] spectral range as QTH or plasma arc lamps do[,] . . . . LED systems . . . . are not equipped with an additional [infra-red] filter. A remaining concern is that there is still a portion of the [infra-red] emission that inevitably also comes with LED's, because the so called 'wings' of the emission spectra of the LED's used extend into the [infra-red] region. Thermal pulp damage from LED-systems cannot be absolutely excluded and has to be taken into consideration, especially when high power LED's are used for a longer period of time."

Id. at 163, quoting Wolfgang Buchalla & Thomas Attin, External

Bleaching Therapy with Activation by Heat, Light or Laser – A

Systematic Review, Dental Materials 23 (2007), at 134-135.   The

District Court also correctly noted that the article discusses risks

associated with an increase in "pulpal temperature" that the application

of the lights may cause.  The article concludes that heat- and

"light-activated bleaching techniques may potentially cause pulp

damage. " Id. at 163, quoting  Wolfgang Buchalla & Thomas Attin,

External Bleaching Therapy with Activation by Heat, Light or Laser –

A Systematic Review, Dental Materials 23 (2007), at 138.  In addition,

"application of heat and light activated bleaching procedures should be

critically weighed up, keeping in mind the physical, physicological and patho-physiological implications mentioned above. " Id.  With this information alone, the language of the Declaratory Ruling easily passes the rational basis test which, as noted above, "may be based on rational speculation unsupported by evidence or empirical data." Heller, 509 U.S. at 320. Here there is an actual concern brought forward by expert and properly before the Dental Commission.

In another scholarly article submitted to the Commission, the authors indicate that "UV and blue light exposure can also give rise to photosensitisation reactions through endogenous (e.g., porphyrins, flavins) and exogenous (e.g., drugs dental materials, cosmetic products) molecures inside the oral cavity." Martinez, 11 F.Supp.3d at 163 citing Ellen M. Bruzell et al., In Vitro Efficacy and Risk for Adverse Effects of Light-Assisted Tooth Bleaching, Photochemical & Photobiological Sciences (2009) at 12.   The authors "advise against light-assisted tooth bleaching. " Id.  As the District Court noted, additional materials cited by Dr. Meiers provided support regarding the idea that the use of enhancing lights in teeth whitening poses some health risk and uncertainties.  Martinez, 11 F.Supp.3d at 164 citing American Dental

Association, Council on Scientific Affairs, <u>Tooth Whitening/Bleaching:</u>
<u>Treatment Considerations for Dentists and Their Patients</u> (Sept. 2009)
at 116.

The fact that plaintiff has found an expert indicating that there is
no harm to use the LED lights that this particular plaintiff uses is
constitutionally irrelevant. What matters is that the plaintiff failed to
"negative every conceivable basis which might support it, whether or
not the basis has a foundation in the record." <u>Heller</u> at 320-321.

The District Court correctly concluded that "the Commission
might rationally have concluded that restricting the use of LED lights
would protect the oral health of the public" and "the Constitution does
not prevent government officials from taking prophylactic measures to
protect the public in the face of uncertainty." <u>Martinez</u>, 11 F.Supp.3d at
164.

Plaintiff's argument that because many teeth whitening products
are legal, any person should be able to use them in any manner is not
relevant to the issue before the Court. There are plenty of medical
supplies that are legal to purchase, but it certainly does not mean that
any person can use them to provide medical care to another person.

Again, a person can choose for themselves whether or not to apply bleaching agents to their own teeth, just as a person could choose to sew up a wound on their own body. However, if another person attempted to sew a wound on a patient's body, it surely would be reasonable for the medical licensing authority to determine that such person must have a license to practice medicine. Also, as noted by the District Court, the Dental Commission certainly has no jurisdiction over individuals who are applying treatment to themselves.

Rather than apply the well-established deferential elements of the rational basis test, plaintiff attempts to rely upon a handful of decisions that are distinguishable from the present case. Plaintiff incorrectly relies on Zobel v. Williams, 457 U.S. 55 (1982) to assert that the Commission must demonstrate logical results from the imposition of the restriction on enhancing whitening via utilization of light. Unlike this case, Zobel involved a challenge based upon the fundamental right to interstate travel recognized under the Constitution. Id. at 58. Fundamental rights include the right to procreate, the right to interstate travel, the right to vote and the right to personal property. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312 n. 3

29

(1976).  In fact, the Supreme Court in <u>Zobel</u> did not reach the question of what level of scrutiny was needed because the statute in that case did not even meet the minimal test proposed by the State of Alaska.  <u>Zobel</u> at 60-62.  The Court noted that "we need not decide whether any enhanced scrutiny is called for."  <u>Id.</u>  Plaintiff's reliance on <u>Zobel</u> is therefore misplaced.

Plaintiff's reliance on the <u>Craigmiles</u> case is also misguided. <u>Craigmiles v. Giles</u>, 312 F.3d 220 (6th Cir. 2002).  In that case, a Tennessee law barred sale of caskets by persons other than funeral home directors.  The Court acknowledged the highly deferential standard used in rational basis cases, but determined that the amendment to the Tennessee law was "nothing more than an attempt to prevent economic competition."  <u>Id.</u> at 225.  With respect to the Declaratory Ruling, there is no evidence that an economic motive played any part in the Commission's Declaratory Ruling as evidenced by the fact that the Commission specifically permitted virtually all teeth whitening activities that do not actively involve the practice of dentistry.  In addition, in <u>Craigmiles</u>, there was no evidence that barring the sale of caskets had any health related purpose.  <u>Id.</u>

Tennessee law did not require that any particular type of casket be used and in fact, it did not require that a casket be used at all.  Id.  In the case at bar, virtually all of the plaintiff's stated practices are permitted under Connecticut law and the one minor restriction is related to protection of the public health.

Plaintiff also relies on a case involving an African hair braider who challenged California's cosmetology licensing scheme.  Cornwell v. Hamilton, 80 F.Supp.2d 1101 (S.D. Cal. 1999).  The language that plaintiff relies upon is actually dicta because the Court found that because plaintiff's "activities are of such a distinguishable nature, she cannot reasonably classified as a cosmetologist as it is defined and regulated presently."  Id. at 1108.  In addition, the majority of federal courts, including two Circuit Court of Appeal, have criticized this decision.  See, Merrifield v. Lockyer, 547 F.3d 978, 985 (9th Cir. (2008); Powers v. Harris, 379 F.3d 1208, 1218 (10th Cir. 2004). The Merrifield Court stated that the reasoning of the Court in Cornwall, "cannot survive equal protection analysis."  Merrifield, 547 F.3d at 985.  The Court further noted that the plaintiffs in Cornwall and Craigmiles were treated the same as other groups under the statutory framework and as

31

a result failed to make out an equal protection claim.

Furthermore, an additional fundamental difference between Cornwell and this case is that in this case, plaintiff can engage in teeth whitening without a license. He can sell teeth whitening gels of differing strengths; he can provide a place for the person to apply the gel; he can provide a client with the instructions for the product that are provided by the manufacturer; he can provide an LED light for the person to position in front of his or her mouth, and he can use a shade guide to demonstrate expected results.

In addition, the Connecticut District Court properly noted that the cases that plaintiff cites as examples of licensing schemes that failed the rational basis test are all examples where the "courts reasoned that even assuming that the practice at issue carried some risk to public health, the licensing statute, as applied to plaintiffs, would do nothing to limit that risk." Martinez, 11 F.Supp.3d at 167, citing Craigmiles, 312 F.3d at 223, 225-26, Clayton v. Steinagel, 885 F.Supp.2d 1212, 1215-16, (D. Utah 2012), and Cornwell at 1109-14. In Clayton and Cornwall, the District Court noted that in the cases involving African hair braiding, the specialized training that plaintiffs

32

would receive through obtaining a cosmetology license was "largely irrelevant" to their practice and would "do nothing to limit those risks." Martinez, 11 F.Supp.3d at 167.  As discussed below, in the present case, the potential risk of harm to the patient may be either avoided or addressed by the licensed dentist.

For all of the foregoing reasons, plaintiff's equal protection claims and substantive due process claims fail.

## II.    WHETHER OR NOT TEETH WHITENING IS TAUGHT IN DENTAL SCHOOL IS IRREVELENT TO THE CONSTITUTIONAL INQUIRY.

Plaintiff asserts that even if there are some health risks, the restriction imposed does not mitigate those risks by prohibiting only non-dentists from positioning LED lights.  Plaintiff also asserts that teeth whitening is not taught in dental schools and that dentists are not taught about the use of LED lights in dental school.  Even assuming arguendo that teeth whitening per se is not taught in dental school, if the Commission rationally concludes that there is some risk to the use of LED lights in the teeth whitening process, it can also rationally conclude that the practice should be restricted to licensed dentists, persons who have received extensive training in oral health.  Martinez,

33

11 F.Supp.3d at 165. In addition, such conduct, the placing of the LED light in front of a patient's mouth, is applying a treatment in direct violation of the Connecticut statute. Conn. Gen. Stat. § 20-123.

If there is some risk, the Commission could rationally conclude that a licensed dentist would be best equipped to handle the situation or evaluate the risk and make the informed judgment whether to proceed with the use of an enhancing light or make modifications to avoid or reduce the risk or be in position to immediately treat any harm that occurred, thereby protecting the public health. Martinez, 11 F.Supp.3d at 169.

Despite making claims that teeth whitening is totally harmless and without risk, plaintiff in his own pleadings indicates that "[c]ustomers are asked to review and sign an information sheet indicating that they will follow all of the instructions supplied with the product and **affirming that they do not have any condition that would contraindicate whitening, such as …. gum disease or a recent oral piercing or surgery**." Civil No. 3:11-cv-01787(MPS), Pl.'s Brief in Supp. of Mot. For Summ. J. at 10 [Dkt. 49-1](emphasis supplied). So in fact plaintiff admits that there are some

34

contraindications for teeth whitening.  Plaintiff seems to know that if a customer has gum disease, teeth whitening would not be a good idea. Plaintiff is merely shifting the burden of the assessment to the plaintiff. Plaintiff also does not offer teeth whitening to minors or women who are nursing or are pregnant.  Id.  Plaintiff indicates that it made this decision "out of an abundance of caution."  Id.  He is also criticizing the Commission, in the face of uncertainty about the risks, for exercising this same caution.

This Court has previously rejected a rational basis challenge to the requirement that licensed mid-wives have nursing training and affiliate with a physician or hospital due to the medical complications that might arise during a pregnancy or childbirth.  Lange-Kessler, 109 F.3d 137.  The plaintiff, who had trained through an apprenticeship known as "direct-entry," rather than through formal education, claimed the requirement violated substantive due process by depriving her of the ability to earn a living in her chosen profession. This Court disagreed.

Given the risks of pregnancy, the court determined that "the legislature could reasonably have believed that midwives who have

35

completed a nursing program, and who are affiliated with a medical professional, are more fit than direct-entry midwives to practice midwifery." Id. at 141. Because "insuring the fitness of midwives is rationally related to the state's legitimate interest in protecting the health and welfare of mothers and infants," the court held that the law's bar on the licensure of direct-entry midwives did not violate substantive due process. Id.; see also Hill v. Gill, 703 F.Supp. 1034 (D. R.I. 1989), aff'd, 893 F.2d 1325 (1st Cir. 1989)(law barring certification of felons and other criminals as school bus drivers did not violate substantive due process); Karan v. Adams, 807 F.Supp. 900, 907 (D. Conn. 1992) (state requirements for psychologist's license, although rigid and "probably result[ing] in the exclusion of some competent psychologists," did not violate substantive due process).

## III. THERE IS NO EVIDENCE TO SUGGEST THAT THIS MINOR RESTRICTION LIMITS COMPETITION AND THERE IS NO MISMATCH BETWEEN COSTS AND BENEFITS.

Plaintiff asserts that Plyler v. Doe stands for the proposition that the Supreme Court has invalidated laws whose alleged benefits were "wholly insubstantial in light of the costs." Plyler v. Doe, 457 U.S. 202, 230 (1982). As the District Court noted, this case "is entirely

36

inapposite, and the Court's passing reference to 'costs' and 'benefits' was not the formulation of a legal standard but a rhetorical device used to condemn Texas's policy of denying education to an entire class of children." <u>Martinez</u>, 11 F.Supp.3d at 168, citing <u>Plyler</u> at 205, 227-230.

<u>Plyler</u> did not apply the traditional deferential rational basis test because of the strong interests at issue. The U.S. Supreme Court carefully noted that while the case did not involve a suspect class or a fundamental right, the case required a more substantial test than the traditional rational test.

> [The challenged state law] imposes a lifetime hardship on a discrete class of children not accountable for their disabling status. The stigma of illiteracy will mark them for the rest of their lives. By denying these children a basic education, we deny them the ability to live within the structure of our civic institutions, and foreclose any realistic possibility that they will contribute in even the smallest way to the progress of our Nation. In determining the rationality of § 21.031, we may appropriately take into account its costs to the Nation and to the innocent children who are its victims. In light of these countervailing costs, the discrimination contained in § 21.031 can hardly be considered rational unless it furthers some substantial goal of the State.

Id. at 223-24. The inability to utilize light to enhance dental whitening cannot be seen as equivalent to the "costs to the Nation and to the innocent children" at issue in Plyler.

For cases which do not involve a suspect or quasi-suspect class, like this one, there is no cost/benefit analysis that has been adopted by the United States Supreme Court or any Circuit Court of Appeals. Even assuming arguendo that there was such a cost/benefit analysis, Plaintiff has presented no evidence whatsoever that there are significant, or any, costs implicated by the Declaratory Ruling. As discussed above, virtually all of the activities of the plaintiff are permitted by the Declaratory Ruling and the Connecticut General Statutes. Plaintiff has indicated that customers can place the LED light in front of their own mouths and has described the placing of the LED light by a member of plaintiff's staff as "trivial assistance." Civil No. 3:11-cv-01787(MPS), Pl.'s Brief in Supp. of Mot. For Summ. J. at 25 [Dkt. 49-1]. It is this trivial assistance that forms the basis of the lawsuit and his unfounded claim of "costs". Also, even assuming that there was some cost benefit analysis required, such analysis would be a function of the legislature, not a judicial function.

38

As succinctly noted by the District Court, "[p]laintiff can still provide teeth whitening services." <u>Martinez</u>, 11 F.Supp.3d at 168. The District Court found that this "minor intrusion on Plaintiff's ability to conduct its business weighs little on any cost-benefit scale (assuming any such scale is even properly part of rational basis review) and **is plainly insufficient to invalidate the declaratory ruling**." <u>Id.</u> (emphasis supplied).

## IV. PLAINTIFF"S CLAIMS REGARDING THE INTEREST OF THE DENTAL COMMISSION IN RESTRICTING COMPETITION IS IRRELEVANT.

Plaintiff claims that licensed dentists, including those on the Commission, charge more for teeth whitening than non-licensed individuals. Assuming arguendo that this is true, it is constitutionally irrelevant. The Supreme Court has held that the motivation for any law is "entirely irrelevant" for constitutional purposes. <u>Beach Commc'ns</u>, 508 U.S. at 315. Under rational basis review, it is constitutionally irrelevant what reasoning motivated a legislative decision. <u>Beattie v. City of New York</u>, 123 F.3d 707, 712 (1997). Once a rational basis has been found, the inquiry of financial or other motives ends. <u>Craigmiles v. Giles</u>, 312 F.3d at 228 . Plaintiff can engage in the

39

teeth whitening business. In fact, plaintiff charged less than one hundred dollars for its services which would increase competition, not lower it. As discussed above, plaintiff has presented no evidence whatsoever that the minor restriction that plaintiff described as "trivial assistance" has had any bearing on the offering of teeth whitening services.

Plaintiff also cites to the North Carolina case pending before the Supreme Court as support that the Declaratory Ruling would somehow limit competition. N.C. State Bd. of Dental Exam'rs v. FTC, 717 F.3d 359 (4th Cir. 2013), cert. granted, 134 S.Ct. 1491 (2014). This case's factual pattern is completely different than the case at hand. In North Carolina, the Board of Dental Examiners violated federal anti-trust law by banning all teeth whitening services by non-dentists. No constitutional challenge was raised or considered. As demonstrated above, teeth whitening services are not banned in Connecticut, and in fact, virtually all of the services offered by plaintiff are allowed under the Declaratory Ruling and state statutes. To suggest, as plaintiff does, that there are "similar facts" is disingenuous at best. Plaintiff's Brief, p. 11. As plaintiff is aware, in North Carolina, even the selling of teeth

40

whitening products was banned.  <u>N.C. State Bd. of Dental Exam'rs</u>, 717 F.3d at 365.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the defendants respectfully request that this Court affirm the decision of the Connecticut District Court.

Respectfully submitted,

GEORGE JEPSEN
ATTORNEY GENERAL

By:  <u>/s/ Daniel Shapiro</u>
Daniel Shapiro
Assistant Attorney General
Federal Bar ct20128
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel.:(860)808-5210
Fac.:(860)808-5385
<u>daniel.shapiro@ct.gov</u>

41

## CERTIFICATION OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE
## <u>REQUIREMENTS AND TYPE STYLE REQUIREMENTS</u>

Case Name:  <u>Sensational Smiles, LLC, DBA Smile Bright and Lisa
Martinez v. Jewel Mullen, Dr., in her official capacity as Commissioner
Of Public Health, Jeanne P. Strathearn, DDS, in her official capacity as
a Member of the Connecticut Dental Commission, Elliot S. Berman,
DDS, in his official capacity as a Member of the Connecticut Dental
Commission, Lance E. Banwell, DDS, in his official capacity as a
Member of the Connecticut Dental Commission, Peter S. Katz, DMD, in
his official capacity as a Member of the Connecticut Dental
Commission, Steven G. Reiss, DDS, in his official capacity as a Member
of the Connecticut Dental Commission, Martin Ungar, DMD, in his
official capacity as a Member of the Connecticut Dental Commission,
Barbara B. Ulrich, in her official capacity as a Member  of the
Connecticut Dental Commission</u>

Docket No.: 14-1381-cv

   1.  This brief is 7936 words and complies with the type-volume
limitation of Fed. R. App. P. 32(a)(7)(B), excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

   2.  This brief complies with the typeface requirements of Fed. R. App.
P. 32(a)(5) and 32(a)(6) as Appellees' brief has been prepared in a
proportionally spaced Century Schoolbook, 14 point, using Microsoft
Word 2010.

<u>/s/ Daniel Shapiro</u>
Daniel Shapiro
Assistant Attorney General

December 10, 2014

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that true and accurate copies of the foregoing brief were served by first class mail, postage prepaid, by Brescia's Printing Service in accordance with Rule 25 of the Federal Rules of Appellate Procedure and agreement of counsel on this 10th day of December, 2014, to the Clerk of this Court and the following counsel of record:

Paul M. Sherman, Esq. <u>psherman@ij.org</u>
Institute for Justice
Suite 900
901 North Glebe Road
Arlington, VA  22203
Tel.: 703-682-9320
Fax: 703-682-9321

Dana C. Berliner, Esq. <u>dberliner@ij.org</u>
Senior Attorney
Institute for Justice
Suite 900
901 North Glebe Road
Arlington, VA  22203
Tel.: 703-682-9320
Fax: 703-682-9321

<u>/s/ Daniel Shapiro</u>
Daniel Shapiro
Assistant Attorney General

43